**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VIRGINIA HUDDLESTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 26-0212-WS-M** |
| | ) | |
| **PAUL BURCH, etc., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on three motions to dismiss filed by the defendants. (Docs. 2, 3, 10). The plaintiffs elected not to respond to the motions. (Docs. 4, 8, 12). One set of defendants nevertheless filed a reply brief. (Doc. 13). The motions are now ripe for resolution. After careful consideration, the Court concludes that each motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1 at 7-28), the City of Bayou La Batre ("the City") received almost $16 million in federal grant funds in 2007 to buy and develop affordable housing for persons displaced by Hurricanes Katrina and Rita. To oversee development and management of the resulting residential housing complex ("Safe Harbor"), the City authorized incorporation of the Bayou La Batre Housing Authority ("the Authority"). In 2013, the Authority hired the lead plaintiff ("Huddleston") as its executive director. In 2017, the City conveyed Safe Harbor to the Authority. (*Id*., ¶¶ 15-16).[1]

---

[1] The second plaintiff is Darryl Wilson. (Doc. 1 at7). The only specific allegation regarding him is that he is a citizen of Alabama and a resident of Semmes, Alabama, (id., ¶ 80, apparently at the same address as Huddleston. (*Id*. at 27). He appears to be a party plaintiff only with respect to Count Ten. (*Id*. at 24-25).

The Authority is overseen by a board ("the Board"). Between late 2016 and mid-2020, the Board and Huddleston executed several employment contracts, each more lavish than the last. By mid-2020, the contract provided Huddleston an annual salary of $120,000, plus a lump sum retirement payout exceeding $2.5 million (replacing a lifetime annual retirement salary of $100,000 plus health coverage/insurance). The contract provided a single basis for default: Huddleston's conviction of a felony. (Doc. 1, ¶¶ 17-18).

The amendment providing for a multi-million dollar lump-sum retirement payout was made in early July 2020. On September 13, 2020, Huddleston resigned. At some point in the interim, Terry Downey, the City's mayor, appointed an entirely new Board: John Wayne Hatcher, Michael Burdine, Paul Burch, Debra Jones, and Stephanie Godsey (collectively, "the Board Members"). He did so as part of a scheme to avoid paying out on the employment contract. Upon Huddleston's resignation, the Board Members, to avoid having to pay her the lump-sum amount, began accusing her of converting funds for personal use and using corporate assets and monies for personal expenses. (Doc. 1, ¶¶ 18-20).

On October 5, 2020, the Mobile County Sheriff's Office ("MCSO") executed a search warrant at Huddleston's home. In the course of the search, personal property was seized, some of which was not specifically mentioned in the search warrant. Local media were present because the defendants had tipped them off. Burch (who was a law enforcement officer with MCSO) and Hatcher were also present. A state judge handling the subsequent criminal matter questioned aspects of the raid, including Hatcher's presence. (Doc. 1, ¶¶ 3, 21-22).

In December 2020, the Authority sued Huddleston in state court ("the State Action"), seeking repayment of retirement funds already paid and nullification of the employment contract and retirement package. (Doc. 1, ¶ 21).

On May 22, 2022, Huddleston was indicted on a charge of third degree felony theft, including allegations she had improperly used the Authority's credit cards and purchased flooring materials, in the approximate amount of $750. Hatcher presented

fabricated and/or unsubstantiated evidence to the grand jury that formed the basis of the charge. Throughout the pendency of the criminal case, Hatcher harassed Huddleston and her attorney. The charge was *nolle prossed* in September 2024, on the day of trial, after it was determined that the allegations had no basis in fact. (Doc. 1, ¶ 22).

Some items seized in October 2020 were never returned. No items were returned until in or after April 2025. Several returned items were damaged beyond repair. (Doc. 1, ¶ 23).

The moving defendants fall into three groups, with each group filing its own motion to dismiss:

- MCSO and Burch, in both his individual capacity and his official capacity with MCSO ("the MSCO Defendants");
- the Authority and the Board Members, in both their individual capacities and their official capacity with the Authority ("the Authority Defendants");
- the City and Downey, in both his individual capacity and his official capacity with the City ("the City Defendants").

(Doc. 1 at 1).[2]

The complaint includes the following counts:

- Count One — false arrest (state law)
- Count Two — false imprisonment (state law)
- Count Three — malicious prosecution (state and federal law)
- Count Four — violation of civil rights (federal law)
- Count Five — false arrest (federal law)

[2] The final named defendant is Jonathan Bush, individually and in his official capacity with MCSO. (Doc. 1 at 7). The only specific allegation against Bush is that, as a sheriff's deputy, he "was also involved in the execution of the unlawful search warrant." (*Id.*, ¶ 21). The file reflects no service of process on Bush.

The complaint also lists by general description seven categories of fictitious defendants. (Doc. 1 at 1). Count Eleven, styled "fictitious parties," simply repeats the style's description of these defendants. (*Id.* at 25-26). No claim is asserted against any of the fictitious defendants that is not asserted against the named defendants.

- Count Six — false imprisonment (federal law); unreasonable search and seizure (federal law)
- Count Seven — deprivation of property (federal law); excessive force (federal law)
- Count Eight — equal protection (federal law)
- Count Nine — conspiracy to interfere with civil rights (federal law)
- Count Ten — conversion (state law)
- Count Eleven — "fictitious parties"

(Doc. 1 at 13-26). The defendants seek dismissal of all claims asserted against them, pursuant to Rule 12(b)(6), for failure to state a claim on which relief can be granted.[3]

**DISCUSSION**

As noted, the plaintiffs have filed no opposition to the motions to dismiss. The Authority Defendants propose that the Court grant their motion on this basis. (Doc. 13 at 3). They cite Local Civil Rule 7(c) for this authority. While Rule 7(c) states that "[f]ailure to file a brief in opposition to any motion ... may be sufficient cause to grant the motion," it expressly excludes motions "under Fed. R. Civ. P. 12(b) or 56" from its field of operation.

"In sum, until the Eleventh Circuit (or Supreme Court) speaks more clearly to the issue or a sister Court (or litigant) provides a more compelling rationale, the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss." *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013). The Authority Defendants do not acknowledge the Court's ruling in *Gailes*, much less identify a precedent or an argument that could prompt the Court to reconsider its position. On the contrary, they direct the Court to *Giummo v. Olsen*, 701 Fed. Appx. 922 (11th Cir. 2017), which ruled that a local rule

---

[3] Burch, in his official capacity with MCSO, also seeks dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. 3 at 10-12).

providing that "[f]ailure to file a response ... shall indicate that there is no opposition to the motion" did not allow the district court to grant a Rule 12(b)(6) motion simply for lack of an opposition brief. *Id*. at 924. The *Giummo* Court identified the governing rule as that "dismissal based only on the failure to follow a local rule's briefing deadline amounts to an abuse of discretion." *Id*. at 924 n.2. *Giummo* is consistent with *Gailes*, which the Court continues to apply.

Under the *Gailes* template, "the Court will review the merits of the defendant's position and, if it is clearly incorrect or inadequate to satisfy the defendant's initial burden, will deny the motion despite the plaintiff's failure to respond. If, however, the defendant's presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the plaintiff could have made but by silence elected not to raise." 916 F. Supp. 2d at 1243-44. "A plaintiff that fails to address a claim challenged by a defendant does so at its peril, both because the Court may not detect defects in the defendant's position that would prevent it from meeting its initial burden and because, once that burden is satisfied, the Court will not on its own raise arguments to counter the defendant's case." *Id*. at 1244 n.12.

The three groups of defendants largely go their own way on motion to dismiss, making individual arguments and declining to adopt any argument of another group. Only a single argument is raised by all three, which the Court considers at the outset.

## I. Statute of Limitations.

The defendants argue that all of the complaint's claims -- except the conversion claim under Count Ten -- are barred by the statute of limitations. (Doc. 2 at 4-6; Doc. 3 at 2-3; Doc. 13 at 5).

Because it is an affirmative defense, a plaintiff generally need not plead around the statute of limitations to avoid dismissal. *E.g., Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024). However, "[a] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013)

(internal quotes omitted). As discussed below, that standard is met here with respect to certain claims. As to such claims, it was therefore incumbent upon the plaintiffs to include in the complaint allegations which, if proved, would "show why the statute of limitations would not apply," with a "failure to do so warrant[ing] dismissal." *Garcia v. Chiquita Brands International, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022). The complaint contains no such allegations.

Counts One and Two allege that Huddleston was falsely arrested and falsely imprisoned, respectively, in violation of state law, on or about May 27, 2022. (Doc. 1 at 13-15). Count Three alleges that Huddleston was maliciously prosecuted, in violation of state and federal law, based on her criminal charge being *nolle prossed* on or about September 9, 2024. (*Id*. at 15-16).

The Alabama statute of limitations for false imprisonment is six years. Ala. Code § 6-2-34(1). The defendants do not explain how Count Two could be time-barred.

Section 6-2-34(1) applies to "[a]ctions for any trespass to person or liberty, such as false imprisonment or assault and battery." The defendants do not explain why false arrest would not constitute a "trespass to liberty" as does false imprisonment.

The Alabama statute of limitations for malicious prosecution claims is two years. Ala. Code § 6-2-38(h). The defendants do not explain how this claim could have accrued before the charges were *nolle prossed* in September 2024, less than two years before this action was filed. *See Barrett Mobile Home Transport, Inc. v. McGugin*, 530 So. 2d 730, 731 (Ala. 1988) (an essential element of a claim for malicious prosecution is a termination of the prior proceeding); *id*. at 733 (a cause of action for malicious prosecution does not accrue simply upon entry of final judgment in the underlying action but upon expiration of the time for filing a notice of appeal (if no appeal is taken) or upon final resolution of any appeal).

Counts Three through Nine allege civil rights violations under federal law. All of these claims, except Count Nine, are brought pursuant to Section 1983. Count Nine is brought pursuant to Section 1985. Count Four is brought pursuant to both provisions. (Doc. 1 at 15-23).

The statute of limitations applicable to all Section 1983 claims "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Alabama, the applicable statute of limitations for Section 1983 claims is two years. *Chapman v. Dunn*, 129 F.4th 1307, 1315 (11th Cir. 2025). A Section 1983 claim accrues when the plaintiff knows they were injured and knows who inflicted the injury; it is irrelevant whether the plaintiff appreciates the viability of a claim. *McGroarty v. Swearingen*, 977 F.3d 1302, 1309 (11th Cir. 2020).

Count Three alleges malicious prosecution. The defendants do not explain how this claim could have accrued before the charges were *nolle prossed* in September 2024, less than two years before this action was filed, and the MCSO Defendants concede that the claim "is not time barred." (Doc. 3 at 3).

Count Four does not identify the civil rights violated, but it does allege that the violations occurred in May 2022. (Doc. 1 at 16). The only act alleged to have occurred at this time is Huddleston's arrest, (*id*., ¶ 22), of which she was necessarily aware when it occurred. This claim is barred by the statute of limitations.

Count Five alleges a Section 1983 claim for false arrest. (Doc. 1 at 17-18). The arrest occurred in May 2022. (*Id*., ¶ 34). This claim is barred by the statute of limitations.

Count Six alleges a Section 1983 claim for false imprisonment. (Doc. 1 at 19-20). It alleges that the false imprisonment occurred at the time of Huddleston's arrest, *viz*., May 2022. (*Id*., ¶ 69). This claim is barred by the statute of limitations.

Count Six also alleges a Section 1983 claim for unreasonable search and seizure of Huddleston's person and property. (Doc. 1 at 19; *id*., ¶ 69). The only alleged seizure of her person occurred in May 2022, and the only alleged seizures of her property occurred in October 2020 and possibly May 2022, and she was aware of them when they occurred. This claim is barred by the statute of limitations.

Count Seven alleges a "deprivation of property." (Doc. 1 at 20). This claim focuses on an alleged failure to return the property after the dismissal of charges (September 2024) rather than on its initial seizure (October 2020 and/or May 2022). (*Id*.,

¶ 23). The defendants have not addressed the scope of Count Seven. Nor have they demonstrated that this claim accrued before the criminal charge was *nolle prossed* in September 2024, less than two years before this action was filed.

The body of Count Seven also alleges the use of excessive force in effecting the arrest. (Doc. 1, ¶ 78). This claim accrued at the time of the arrest in May 2022 and is thus barred by the statute of limitations.

Count Eight alleges a violation of equal protection occurring at the time of the search and at the time of the arrest, *viz*., October 2020 and May 2022. (Doc. 1, ¶¶ 87, 91-93). The claim accrued at those times and is thus barred by the statute of limitations.[4]

Count Nine alleges a Section 1985 conspiracy "[i]n th[e] arrest and imprisonment" of Huddleston. (Doc. 1, ¶ 99). A two-year limitations period applies to claims in Alabama under Section 1985. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024). For such a claim, "the statute of limitations [runs] separately for each overt act taken in furtherance of the conspiracy." *Id*. The final overt act alleged by the complaint occurred in May 2022. The conspiracy claim accrued no later than at that time and is thus barred by the statute of limitations.[5]

In summary, Counts Four, Five, Six, Eight and Nine, and the excessive force aspect of Count Seven, are all due to be dismissed for failure to state a claim because they are barred by the statute of limitations.

---

[4] The body of Count Eight makes a redundant allegation that the defendants failed to return seized property after dismissal of the criminal charges, (*id*., ¶ 89), but it does not allege that this constituted a violation of equal protection.

[5] As the City Defendants note, (Doc. 2 at 12-13), the only portions of Section 1985 that Huddleston could even conceivably invoke require that the conspiracy be motivated by racial, or perhaps other class-based, invidiously discriminatory animus. *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021). Because the complaint fails to allege such a motivation, Count Nine fails to state a claim on which relief can be granted.

## II. Authority Defendants.

The Authority Defendants assert two affirmative defenses, followed by four attacks on the merits of specific claims.

### A. Laches.

In addition to the statute of limitations, the Authority Defendants raise a second timeliness defense: that of laches. (Doc. 10 at 16-18). By citing only Alabama cases in support, they limit the scope of their argument to the state claims alleged in Counts One, Two, Three, and Ten.

"This Court has held that laches is an equitable principle and is a defense only to suits in equity, ... or to those proceedings at law which are controlled by equitable principles such as a mandamus proceeding." *Ex parte Sasser*, 730 So. 2d 604, 605 (Ala. 1999) (internal quotes omitted). The Authority Defendants' own authority expresses the same limitation on the doctrine. *Elliott v. Navistar, Inc*., 65 So. 3d 379, 386-87 (Ala. 2010) (accepting as "thoroughly sound" the principle that "where the issue involved is a legal one and does not lie within the breast or conscience of the chancellor[,] the statute of limitations is the applicable rule and the defense of laches may not properly be interposed") (internal quotes omitted). The complaint's state claims are legal claims subject to statutes of limitation. Accordingly, laches has no role to play.

### B. Res Judicata.

The Authority Defendants next argue that all claims against them are barred by res judicata. (Doc. 10 at 14-16). The argument is based on the State Action.

“When we consider whether to give res judicata effect to a state court judgment, we must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation.” *Muhammad v. Secretary, Florida Department of Corrections*, 739 F.3d 683, 688 (11th Cir. 2014) (internal quotes omitted). “Under Alabama law, the essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the

parties, and (4) with the same cause of action presented in both actions." *Green v. Jefferson County Commission*, 563 F.3d 1243, 1252 (11th Cir. 2009) (internal quotes omitted). "If all four elements are met, any claim that was, or could have been, adjudicated in the prior action is barred from future litigation." *Id*.

In the State Action, the Authority sued the plaintiffs herein (along with several former members of the Board) under several theories. (Doc. 13-1 at 6). The plaintiffs herein filed a succession of counterclaims against the Board and third-party complaints against the Board Members. (Docs. 10-1 to 10-4). The Authority Defendants state that "[t]he various counterclaims and third-party complaints were dismissed on February 14, 2023." (Doc. 10 at 15). They attach no evidence of such dismissal, and the Court's review of the state docket for the date in question (which it was under no obligation to perform) reveals only that the second of the four iterations of these filings was dismissed, on motion of the plaintiffs herein. Nothing brought to the Court's attention reflects that all iterations of the plaintiffs' filings have been dismissed. Nor have the Authority Defendants identified any "judgment" entered in the State Action, much less a judgment "on the merits," to which res judicata protection could attach. The Court will not fill in the holes in their presentation.

**C. False Arrest/False Imprisonment.**

As the Authority Defendants assert, (Doc. 10 at 7), "[t]he law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person." *Ennis v. Beason*, 537 So. 2d 17, 19 (Ala. 1988). They correctly note the complaint's allegation that Huddleston was arrested five days after she was indicted, (Doc. 1, ¶ 22), but they assume rather than demonstrate that the indictment "resulted in a warrant being issued for [her] arrest" and that she was arrested "pursuant to the warrant issued by a magistrate." (Doc. 10 at 8). As plausible as their story may be, they have neither shown that Huddleston was arrested pursuant to a valid warrant issued by a lawfully authorized person nor argued that pleading rules required her to allege the lack of such a warrant.

**D. Malicious Prosecution.**

"The plaintiff in a malicious prosecution case must prove each of the following elements: 1) that a prior judicial proceeding was instigated by the defendant 2) without probable cause ...." *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 183 (Ala. 2016) (internal quotes omitted). As the Authority Defendants note, (Doc. 10 at 8-9), "[i]n malicious prosecution the general rule is that the finding of an indictment by a grand jury against one charged with crime is prima facie evidence of the existence of probable cause." *Smith v. Wendy's of the South, Inc*., 503 So. 2d 843, 844 (Ala. 1987) (emphasis and internal quotes omitted). They further correctly note that neither a jury's decision to acquit nor a prosecutor's decision to *nolle prosse* tends to show a want of probable cause when the prosecution was initiated. *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 967 (Ala. 1981).

Although the Authority Defendants rely on *Smith*, they overlook an exception expressed in its very next sentence: "This prima facie showing of the existence of probable cause created by an indictment by a grand jury can be overcome by a showing that the indictment was induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment." 503 So. 2d at 844 (emphasis and internal quotes omitted). The complaint alleges that Hatcher "presented [to the grand jury] fabricated and/or unsubstantiated evidence which was the basis of the charge." (Doc. 1, ¶ 22). The complaint further alleges that Burdine, Jones, and Godsey were "personally involved with the fabrication of the evidence presented to the grand jury." (*Id*., ¶¶ 9-11). The Authority Defendants do not explain how these allegations could fail to implicate the exception.

The Authority Defendants next argue that they did not "instigate the criminal proceedings." (Doc. 10 at 9-10). They rely on *King v. Second National Bank & Trust Co*., 173 So. 498 (Ala. 1937), for the proposition that "[a] citizen, without hazard to himself, may freely bring before the grand jury the fact that a crime has been committed, request an investigation, and furnish such information as he has in aid of the

investigation. In this the citizen is not a prosecutor." *Id*. at 499. *King*, however, stands also for the proposition that "[i]t is the law that one who, shielding himself behind a grand jury investigation, corruptly or oppressively brings about the indictment and prosecution of another maliciously and without probable cause, is no less guilty than if he had sworn out a warrant in the first instance. This may be accomplished by fraud, perjury, subornation, or by the willful suppression of known material facts, the intentional thwarting of a fair investigation." *Id*. at 500. As noted in the preceding paragraph, the complaint alleges the latter, inculpatory situation and not the former, exculpatory one.

**E. Conversion.**

Count Ten is based on the failure to return certain items of the plaintiffs' personal property "that were seized during the search of their home on October 5, 2020." (Doc. 1, ¶ 107). This search was conducted by MSCO. (*Id*., ¶¶ 21, 108). Count Ten alleges that "Defendants" wrongfully took, retained, or otherwise exercised dominion over this property such as to render "Defendants" liable for conversion. (*Id*., ¶¶ 109, 113).

"The elements of conversion include a wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another ...." *Fletcher v. Eddins*, 392 So. 3d 17, 29 (Ala. 2023) (internal quotes omitted). The Authority Defendants argue that Count Ten fails to state a claim against them because the complaint alleges that MCSO, and not they, took possession of and exercised dominion over the property seized during the search. (Doc. 10 at 13-14).

The Court agrees, to a point. The Complaint alleges that only law enforcement participated in the search and consequent seizure, which plausibly supports initial dominion only by law enforcement. However, the Complaint elsewhere alleges that Bush "releas[ed] ... Plaintiffs' personal property illegally seized to a private citizen, John Wayne Hatcher." (Doc. 1, ¶ 4). The Authority Defendants have not explained how that allegation fails to implicate Hatcher in the conversion claim.

As to the other Board Members, "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Given the specific allegations of the complaint limiting dominion to law enforcement and Hatcher, Count Ten's general and conclusory reference to "Defendants" is inadequate to state a conversion claim against the other four Board Members.

As to the Authority, the Authority Defendants fail to address whether it may be liable for Hatcher's alleged conversion, and the Court will not develop an argument on their behalf. The same is true as to the Board Members in their official capacity.

**F. Federal Claims.**

Finally, the Authority Defendants turn to Counts Four through Nine.[6] As discussed in Part I, the only claim within this grouping to survive the defendants' statute-of-limitations challenge is the "deprivation of property" allegation under Count Seven. As noted in Part I, that claim is based on the alleged failure to return, after the dismissal of criminal charges, the plaintiffs' property seized in May 2020. As noted in Part II.E, the only Authority Defendant alleged ever to have had possession of, or dominion over, any of this property is Hatcher. As established in Part II.E, Count Seven's general allegation that "Plaintiff's property still has not been returned by the Defendants," (Doc. 1, ¶ 78), is insufficient to overcome the specific allegations of the complaint limiting the range of potentially culpable defendants. This claim thus necessarily fails as to all Board Members except Hatcher.

The Authority Defendants argue that they did not engage in state action and that there is no close nexus between them and the state. (Doc. 10 at 11-12). The Court limits its discussion to Hatcher, since only he is potentially liable. Their argument fails on multiple levels. First, the question on motion to dismiss is not whether Hatcher was in

[6] They do not address the federal aspect of Count Three.

fact a state actor with respect to the plaintiffs' property but whether the complaint adequately alleges him to be such. Second, the Authority Defendants do not cite, much less apply, a single legal authority regarding the state action requirement of Section 1983 liability. Third, they do not address the allegations of the complaint regarding Hatcher's involvement. Fourth, they assume that state action depends on Hatcher's relationship to law enforcement, without considering whether his relationship to the Authority would suffice to satisfy the state action requirement. The Court declines to fill the many holes in the Authority Defendants' presentation.

As with the conversion claim, Hatcher, the Authority, and the Board Members in their official capacity remain as defendants under Count Seven.

## II. MCSO Defendants.

The MSCO Defendants present separate arguments for each defendant.

### A. MCSO.

MCSO's argument is sweet and simple: it is not a legal entity capable of being sued. (Doc. 3 at 2). This Court has repeatedly so observed. *E.g., Gailes*, 916 F. Supp. 2d at 1240 ("'It is clear under Alabama law that the sheriff's department is not a legal entity subject to suit.'") (quoting *Ex parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003)).

### B. Burch -- Individual Capacity.

Burch argues that the complaint is "devoid of any factual allegations against" him and that it fails to "articulate any ... actions or omissions taken by [him] that would form the basis for a claim against him." According to Burch, the only factual allegations concerning him are that he was present at the time of the October 2020 search and that he had a conflict of interest because he was at that time a newly appointed member of the Board. These two allegations, he says, can support no cause of action against him. (Doc. 3 at 7).

The Court finds Burch's listing incomplete. The complaint also alleges that Burch was commander of MCSO's criminal investigation unit during the relevant time, until his becoming sheriff in 2023. (Doc. 1, ¶ 3). It alleges that he represented MCSO at the October 2020 search. (*Id.*, ¶ 21). It alleges that he was acting in a supervisory capacity at the time of Huddleston's arrest. (*Id.*, ¶ 60). And it alleges that he violated multiple of Huddleston's civil rights on the day of her arrest. (*Id.*, ¶¶ 71, 81, 91, 101).

Because all other claims are due to be dismissed on limitations grounds, the Court considers Burch's argument that the complaint contains insufficient factual allegations against him only with respect to Counts One, Two, Three, Ten, and the "deprivation of property" aspect of Count Seven.

Counts One and Two focus on Huddleston's arrest and consequent imprisonment. The complaint alleges that Burch acted in a supervisory capacity at the time of the arrest and violated Huddleston's civil rights that day. Because Burch does not address these allegations or their relationship to these claims, he cannot obtain dismissal of them.

Count Three focuses on the conduct resulting in Huddleston's indictment. The complaint does not allege that Burch had any connection to the procurement of an indictment.[7] The complaint therefore fails to state a claim against him.

Counts Seven and Ten focus on the retention of the plaintiffs' property following the termination of criminal proceedings. The complaint does not allege that Burch in his individual capacity ever had possession of, or held dominion over, such property, much less that he did so at the relevant time. The complaint therefore fails to state a claim against him.

[7] This is in sharp contrast to its allegations that other Board Members were "personally involved with the fabrication of the evidence presented to the grand jury." (*Compare* Doc. 1, ¶ 3 *with id*., ¶¶ 8-11).

**C. Burch -- Official Capacity.**

Burch was a deputy sheriff during the relevant period, up to his becoming sheriff in 2023. (Doc. 1, ¶¶ 3, 60). Burch claims the protection of the Eleventh Amendment as to the federal claims and the protection of Section 14 of the Alabama Constitution as to the state claims. (Doc. 3 at 10-12).

"It is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Melton v Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016). While the Eleventh Amendment sometimes allows pursuit of prospective declaratory and injunctive relief,[8] the complaint seeks no such relief. Burch is thus entitled to dismissal of all claims asserted against him in his official capacity as deputy or as sheriff.

Burch asserts that Section 14 immunizes him so long as "'the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.'" (Doc. 3 at 11 (quoting *Association of. County Commissions Liability Self-Insured Fund v. Robinson*, 777 Fed. Appx. 397, 399 (11th Cir. 2019)). Burch assumes this is all he need say, but *Robinson* itself states that a defendant cannot simply declare his "mere status as a state official." 777 Fed. Appx. at 399 (internal quotes omitted). Instead, because it is an affirmative defense, Section 14 immunity must be denied "at the motion-to-dismiss stage [if] the plaintiff's complaint [is] silent on whether the deputy sheriff was acting within the scope of his employment" and the defendant offers no "'evidence showing at the time of the accident he was acting within the line and scope of his employment.'" *Id*. at 400 (describing and quoting *Haralson*, 853 So. 2d at 933). As in *Haralson*, so here. Because Burch has not addressed this element of his defense, he cannot obtain dismissal on state immunity grounds.

---

[8] *E.g., National Association of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020).

## IV. City Defendants.

The City Defendants also present separate arguments for each defendant.

### A. City -- Federal Claims.

"The 'touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of civil rights protected by the Constitution.'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). The City argues that the complaint "fails to plausibly state any actionable constitutional violations due to an official policy or custom" because it does not "identify any examples that demonstrate widespread unconstitutional conduct." (Doc. 2 at 7). The City misapprehends municipal liability.

Certainly one way in which a plaintiff may establish the policy necessary for municipal liability is to show that "final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling*, 811 F.3d at 1279. The complaint plainly contains no allegations along these lines. However, there are other ways of showing municipal policy. One is "an official policy enacted by [the entity's] legislative body." *Id*. Another is "ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Id*. (internal quotes omitted). And another is when the final policymaker makes the initial decision.

"*Monell* reasoned that recovery from a municipality is limited to acts ... which the municipality has officially sanctioned or ordered. With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Thus, for example, a mayor may be the final policymaker with respect to particular termination decisions made by him. *Willingham v. City of Valparaiso*, 638 Fed. Appx. 903, 908 (11th Cir. 2016).

The complaint alleges that Downey, as mayor of the City, appointed the Board Members in furtherance of a scheme, including by threats and accusations directed at Huddleston, to avoid paying the sums called for by the employment contract. (Doc. 1, ¶¶ 19-20). The City, which ignores this allegation, has failed to show that it does not constitute a plausible allegation that Downey was the final decisionmaker for purposes of municipal liability.

**B. City -- State Claims.**

"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality." Ala. Code § 11-47-190. Pursuant to Section 11-47-190, "a municipality cannot be held liable for the intentional torts of its employees." *Wheeler v. George*, 39 So. 3d 1061, 1085 (Ala. 2009). The City claims the protection of this provision with respect to all four tort claims asserted in the complaint. (Doc. 2 at 8).

The City assumes that false arrest and false imprisonment are necessarily intentional torts. They are not. "Had the Legislature intended to restrict the tort of false imprisonment to intentional acts, it easily could have chosen words far more specific than the word 'unlawful' to characterize the conduct constituting the tort." *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1131 (Ala. 2000). Therefore, when such claims are based on alleged conduct that may be characterized as neglect, carelessness, or unskillfulness, a municipality may be liable for its agent's tort. *Id.*; *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183-84 (Ala. 2003); *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). In this case, however, Counts One and Two expressly allege that the defendants acted willfully and maliciously, (Doc. 1, ¶¶ 29, 37), allegations that negate a claim based on neglect, carelessness, or unskillfulness.

It appears that malicious prosecution is necessarily an intentional tort as to which a municipality cannot be held liable in light of Section 11-47-190. *Walker v. City of Huntsville*, 62 So. 3d 474, 501-02 (Ala. 2010). In any event, Count Three expressly

alleges that the defendants acted willfully, maliciously, and motivated by spite, (Doc. 1, ¶¶ 43, 45), allegations that negate a claim based on neglect, carelessness, or unskillfulness.

"Conversion is an intentional tort." *Schaeffer v. Poellnitz*, 154 So. 3d 979, 989 (Ala. 2014) (emphasis and internal quotes omitted). Even so, the Court of Civil Appeals has indicated that, "because it is the act of conversion itself that gives a right of action, and not the intent to convert," a plaintiff may allege a conversion claim based on neglect or carelessness that avoids the immunity otherwise imparted by Section 11-47-190. *Crowe v. City of Athens*, 733 So. 2d 447, 451 (Ala. Civ. App. 1999) (internal quotes omitted). Be that as it may, Count Ten alleges that the defendants' conduct was "willful, malicious, or in reckless disregard of Plaintiffs' rights." (Doc. 1, ¶ 113). Because reckless conduct "falls outside those acts of neglect, carelessness, or unskillfulness for which the City may be liable under § 11-47-190," *Walker*, 62 So. 3d at 502, this allegation negates municipal liability.

In short, the City is immune from liability under each of the complaint's state tort claims.

**C. Downey -- Official Capacity.**

Downey argues that the official-capacity claims against him, both state and federal, are redundant with the claims against the City. (Doc. 2 at 8-9). Because the plaintiffs seek only damages, to the exclusion of declaratory or injunctive relief, the Court agrees. *E.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Benning v. Commissioner*, 71 F.4th 1324, 1335-36 (11th Cir. 2023); *Ex parte Gilland*, 274 So. 3d 976, 980 n.1 (Ala. 2018).

**D. Downey -- Individual Capacity.**

Downey does not challenge the plaintiffs' claims on their merits. Instead, he says he is protected by qualified immunity as to the federal claims and by state-agent immunity as to the state claims. (Doc. 2 at 9-12).

To prevail on the affirmative defense of qualified immunity, Downey must first show that his allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. To meet this burden, he must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). That is, he must show that "objective circumstances compel the conclusion that [his] challenged actions occurred in the performance of [his] duties *and* within the scope of his authority." *Id*. at 1266 (internal quotes omitted, emphasis in original).

The complaint alleges that Downey appointed and oversaw the Board Members. Downey cites several cases and statutes to support the proposition that, as the mayor of the City, he had the authority to appoint and oversee the Board Members. (Doc. 2 at 10). As plausible as the existence of such authority may be as an abstract matter, none of Downey's sources "compel th[at] conclusion." One case addresses a provision of the 1940 Alabama Code that Downey makes no effort to trace to his own authority six decades and one Code later. Two cases speak in glittering generalities about a mayor's executive authority without addressing the specific question of power to appoint and oversee members of a housing authority. The final statute addresses the appointment of members of airport authorities and industrial development authorities, not housing authorities.

Downey next argues that he need not demonstrate his authority because the complaint admits he possessed it. (Doc. 2 at 10). The complaint, however, alleges only that Downey in fact appointed board members and oversaw them; it does not allege that he was legally invested with authority to do so.

State-agent immunity jurisprudence imposes a similar threshold burden on Downey. He argues that the complaint itself carries his burden because it alleges that he "was serving as the mayor." (Doc. 2 at 12). This is inadequate, because it is not the position but the function that is the focus of the defendant's burden.

Downey's only other effort to meet his burden is to declare that he "was clearly performing statutory duties in appointing and overseeing members of" the Authority. (Doc. 2 at 12). As just noted, however, Downey has not in fact demonstrated his statutory authority to make such appointments and to oversee board members.

A state agent who (unlike Downey) has met his initial burden is clothed with immunity from civil liability in his individual capacity unless either positive law requires otherwise or the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). The complaint alleges that the defendants so acted. (Doc. 1, ¶¶ 29, 37, 45). Downey scoffs that these are mere conclusory statements, (Doc. 2 at 12), but they are backed up by the specific allegations discussed in Part IV.A. (Doc. 1, ¶¶ 19-20). Downey ignores these allegations and, without addressing them, he cannot show that an exception to state-agent immunity is inadequately pleaded.

**V. Shotgun Pleading.**

The MCSO Defendants and the City Defendants -- but not the Authority Defendants -- ask the Court to dismiss the complaint as a shotgun pleading. (Doc. 2 at 14-18; Doc. 3 at 7-9). The complaint is a shotgun pleading in two respects: first, each count "adopt[s] and reallege[s] each and every provision of the Complaint as if fully set out herein." (*E.g.*, Doc. 1, ¶ 106). Second, each count alleges that "Defendants" did such and such, without stating which of the defendants did so or which of the defendants is sued under that count. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2013) (describing four types of shotgun pleading). However, a complaint is not subject to automatic dismissal simply because it can legitimately be described as a shotgun pleading.

A shotgun pleading employing incorporation by reference becomes problematic only if the practice "materially increase[s] the burden of understanding the factual allegations underlying each count," *Weiland*, 792 F.3d at 1324, and dismissal is appropriate "where it is virtually impossible to know which allegations of fact are

intended to support which claim[s] for relief." *Id*. at 1325 (internal quotes omitted). By extrapolation, so too the use of "the Defendants" to describe conduct or identify the parties sued under each count does not support dismissal if the complaint otherwise provides clarification.

The City Defendants first argue that the complaint fails to give *other* defendants adequate notice, (Doc. 2 at 16), but those defendants are capable of speaking for themselves, and they have voiced no such concern: the Authority Defendants declined to challenge the complaint as a shotgun pleading at all, and the MCSO Defendants declined to claim any difficulty understanding the complaint as it relates to them. (Doc. 3 at 7-9). The Court will not dismiss a complaint based on a purported confusion that the purportedly confused do not express.

The City Defendants next say, rather conclusorily, that they find the complaint "unintelligible," (Doc. 2 at 18), yet they failed to file a Rule 12(e) motion for more definite statement. *See Weiland*, 792 F.3d at 1324 (such a failure suggests the shotgun nature of the complaint did not materially increase the burden of understanding it).

The complaint is far from a paragon of craftsmanship, but the Court concludes that is not due to be dismissed. Several considerations inform this decision. First, this order accomplishes the dismissal of half the complaint's ten substantive counts, leaving much less for the City Defendants to address. Second, the remaining counts center on only three basic events: the initiation of criminal charges against Huddleston (Count Three); her arrest and consequent imprisonment on those charges (Counts One and Two); and the failure to return the plaintiffs' property after the charges were *nolle prossed* (Counts Seven and Ten).

Third, the complaint contains specific allegations regarding the City Defendants' role in these events. Downey's only alleged conduct is setting Huddleston's prosecution in motion by appointing the Board Members as part of a scheme to deprive the plaintiffs of the benefit of their contracts, including by obtaining a felony conviction. (Doc. 1, ¶¶ 19-20). The City's only alleged involvement is having a mayor who did this. (*Id*., ¶ 6).

Fourth, and as discussed in Part I.E, specific factual details trump general or conclusory allegations. Application of that rule would appear to eliminate the City Defendants as viable defendants under Count Ten and its federal counterpart, Count Seven.

The specific allegations against Downey addressed above make it obvious that he is among the "Defendants" sued under Counts One, Two, and Three. It remains to be seen whether his alleged conduct would support liability for the alleged malicious prosecution of Huddleston or for her ensuing alleged false arrest and imprisonment. As construed by the Court, however, the complaint as it now stands does not "fail to give [the City Defendants] adequate notice of the claims against them and the grounds upon which each claim against defendants rest." (Doc. 2 at 14).

## CONCLUSION

For the reasons set forth above:

A. The defendants' motions to dismiss are **granted** with respect to Counts Four, Five, Six, Eight, and Nine, and with respect to the excessive force aspect of Count Seven. Counts Four, Five, Six, Eight, and Nine, and the excessive force aspect of Count Seven, are **dismissed**.

B. The Authority Defendants' motion to dismiss is **granted** with respect to Counts Seven and Ten as to Burch, Burdine, Godsey, and Jones in their individual capacities. Counts Seven and Ten as to Burch, Burdine, Godsey, and Jones in their individual capacities are **dismissed**.

C. The MCSO Defendants' motion to dismiss is **granted** as to MCSO, is **granted** with respect to Counts Three, Seven and Ten as to Burch in his individual capacity, and is **granted** with respect to all federal claims as to Burch in his official capacity as sheriff and/or deputy sheriff. All claims against MCSO are **dismissed**. Counts Three, Seven, and Ten as to Burch in his individual capacity are **dismissed**. Count Seven and the federal aspect of Count Three, as to Burch in his official capacity as sheriff and/or deputy sheriff, are **dismissed**.

D. The City Defendants' motion to dismiss is **granted** with respect to all state claims as to the City and is **granted** with respect to all claims as to Downey in his official capacity. Counts One, Two, Three, and Ten as to the City are **dismissed**. Counts One through Ten as to Downey in his official capacity are **dismissed**.

In all other respects, the defendants' motions to dismiss are **denied**.

DONE and ORDERED this 21st day of August, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE